James S. MOFFITT, Plaintiff–Appellee,

v.

TOWN OF BROOKFIELD, Brookfield Police Commission, John W. Anderson individually and in his capacity as Chief of the Brookfield Police Department, William R. Marcy, John Martino, Alfred Kosloffsky, Peter Sanderson, and Joseph Siklos, in their individual capacities and as members of the Board

of Police Commissioners, Ralph Fort-miller in his official capacity as Captain of the Brookfield Police Department, and Detective Sergeant John Lucas, in his individual capacity as well as a member of the Brookfield Police Department, Defendants–Appellants.

No. 1769, Docket 91–7329.

United States Court of Appeals,
Second Circuit.

Argued July 24, 1991.

Decided Dec. 20, 1991.

Edward T. Lynch, Jr., New Britain, Conn. (Eisenberg, Anderson, Michalik & Lynch, of counsel), for defendants-appellants.

Dawn M. Dittmar, Ridgefield, Conn., for plaintiff-appellee.

Before WINTER, ALTIMARI and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendants-appellants Town of Brookfield (the "Town"), Brookfield Police Com-

mission (the "Commission"), and Commission members William R. Marcy, John Martino, Alfred Kosloffsky, Peter Sanderson, and Joseph Siklos (collectively the "Commissioners") appeal from a decision of the United States District Court for the District of Connecticut, Warren W. Eginton, *Judge,* affirming on reconsideration the district court's prior denial of their motion for summary judgment.[1] The Commissioners contend that the action should have been dismissed as to them (in their individual capacities) on the basis of qualified immunity as a matter of law, and maintain that we accordingly have appellate jurisdiction and should reverse on this issue. The Town and the Commission seek reversal as an exercise of pendent appellate jurisdiction.

We dismiss the appeal for lack of appellate jurisdiction.

## Background

Plaintiff-appellee James S. Moffitt brought this action, pursuant to 42 U.S.C. § 1983 (1988), claiming deprivation of a property interest without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Moffitt also asserted that the conduct constituting that deprivation violated Connecticut law in a number of respects.

The following facts are not disputed by the parties. Moffitt, a resident of New Milford, Connecticut, was a police officer with the Brookfield Police Department (the "Department") from April 15, 1985 until April 26, 1987. On Sunday, April 26, 1987, four members of the Department arrived at Moffitt's home in New Milford with an arrest warrant for Moffitt's wife, Rebecca Moffitt, charging her with three counts of forgery arising from her "propensity for bouncing checks," and a letter from defendant John W. Anderson, Chief of the Department, ordering Moffitt to report for duty. Moffitt obeyed the order and reported to the Department. Moffitt then met

with Chief Anderson, defendant Ralph Fortmiller, the Captain of the Department, and defendant John Lucas, a detective sergeant in the Department.

Moffitt's amended complaint alleges that Anderson, Fortmiller, and Lucas berated Moffitt, called him "stupid," and accused him of being aware of his wife's criminal conduct. Moffitt claims that Anderson, Fortmiller, and Lucas ordered him to sign a letter of resignation which they had previously prepared on Department letterhead, and threatened that he would otherwise face immediate suspension, departmental charges, and criminal prosecution. Moffitt states that he expressed a desire to speak to his union representative, but was prevented from doing so, and that he finally signed the letter of resignation under duress, without reading the letter, fearing for his safety and well-being, as well as that of his wife and three children. The text of the letter is: "For personal reasons, I am resigning my position as a Brookfield Police Department Officer effective this date, April 26, 1987."

Moffitt alleges that defendants had been conducting a secret investigation of him in contravention of the pertinent collective bargaining agreement. Moffitt filed a motion for leave to amend his complaint to add an allegation that defendants illegally searched his bank records on or about April 1, 1987, but the district court denied the motion. Moffitt alleged, and it was admitted, that "[d]efendants" had been investigating complaints that Moffitt was involved with his wife's criminal conduct, had prepared affidavits for an arrest warrant, had provided them to the New Milford Police Department, and had sought Moffitt's arrest. Moffitt also claims that approximately eight days after the meeting with Anderson, Fortmiller, and Lucas, "[d]efendants" wrongfully charged him with conspiracy to commit larceny in the first degree in New Milford. This charge was

---

1. The notice of appeal was filed in behalf of all defendants, all of whom are represented by the same counsel, and John W. Anderson, Ralph Fortmiller, and John Lucas are accordingly identified in the caption of this appeal as defendants-appellants. Counsel for defendants-appel-

lants stated in oral argument, however, that only the Town, the Commission, and the Commissioners are appealing, and defendants-appellants' brief and oral argument on appeal advanced arguments only in behalf of the Town, the Commission, and the Commissioners.

subsequently dismissed on November 6, 1987.

In their answer, defendants deny that Anderson, Fortmiller, and Lucas berated Moffitt and denied him union representation at the meeting on April 26, 1987. They admit having previously prepared a letter of resignation for his signature, do not deny ordering him to sign it, and admit that he did so. Fortmiller asserted during deposition testimony that Moffitt read his resignation twice before signing it. Defendants also claim in their answer that Moffitt resigned voluntarily as a matter of law.[2]

On or about May 15, 1987,[3] Moffitt wrote to the Commission and Anderson appealing his termination and requesting reinstatement. Moffitt asserted violations of the rules and regulations of the Department, of the pertinent collective bargaining agreement, and of "certain rights guaranteed me under the Constitution of the State of Connecticut and the Constitution of the United States." He quoted a provision of the collective bargaining agreement which specified that he could not be "discharged . . . without just cause," and asserted that his resignation had been unjustly coerced "because of the emotional state of mind and mental duress [Moffitt] was placed in on . . . April 26, 1987." In doing so, he spelled out in considerable detail his version of the events of April 26, 1987, asserting, *inter alia*, that he was at that time "extremely emotionally upset," that his "wife had just been arrested," and then continuing:

> Sgt. Lucas had stated that I must have known what my wife was doing because I was married to her and that if I resigned no criminal charges would be brought against me. Chief Anderson

then stated that if I did not resign I would face immediate suspension, departmental charges and criminal prosecution. By now I felt like my whole world was coming to an end. I was being given a choice with no choice. My career was being taken away. I was being told that I would be arrested when I had no idea what was going on. The mother of my children was in jail with a bond that I could in no way make. I asked Chief Anderson if I was to resign, what kind of recommendation would I get from him. Chief Anderson stated that he would not give me any kind of a recommendation. Capt. Fortmiller and Det. Sgt. Lucas were both encouraging me to resign saying that it was for the best. Chief Anderson then pushed a piece of paper in front of me and without ever actually reading it, I signed it. By this time I had completely emotionally broken down. I had three children to worry about and know [sic] idea how I was going to take care of them.

In a letter dated June 24, 1987, the Commission declined to hear Moffitt's appeal on the ground that it lacked jurisdiction. This position was premised upon advice of counsel, who had reviewed applicable labor law, that Moffitt's appeal "was not a properly filed grievance and should not be entertained by the Police Commission" because "Moffitt had resigned and was not employed by the police department at the time the grievance was filed."

Moffitt thereafter commenced this action against the Town, the Commission, the five Commissioners, and Anderson, Fortmiller, and Lucas. All individual defendants were sued in their individual and official capacities except Fortmiller, who was sued only

2. Defendants-appellants do not press this contention on appeal. If Moffitt was coerced into surrendering a job in which he had a constitutionally protected property interest, a violation of section 1983 occurred. *See S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 968 (2d Cir. 1988); *McAdoo v. Lane,* 564 F.Supp. 1215, 1221 (N.D.Ill.1983), *aff'd mem.,* 774 F.2d 1168 (7th Cir.1985).

3. Moffitt states in his brief on appeal that this letter was filed with the Commission on May 8, 1987, but both his complaint and amended com-

plaint specify the date as "on or about May 15, 1987." Counsel for defendants-appellants stressed at oral argument that the correct date was May 15, 1987, and that the filing of Moffitt's "grievance" was therefore untimely under the collective bargaining agreement between the Town and the police union. The Commission appears to have regarded Moffitt's lapsed status as an employee, rather than any untimeliness in his filing, as the basis for its asserted lack of "jurisdiction" to consider his appeal.

in his official capacity.[4] In their answer, defendants raised the affirmative defenses of qualified immunity with respect to Anderson, Fortmiller, Lucas, and the Commissioners; immunity from respondeat superior liability under 42 U.S.C. § 1983 (1988) with respect to the Commission; and, as previously noted, voluntary resignation by Moffitt "as a matter of law" with respect to all of the defendants.

Defendants moved for summary judgment. The district court denied the motion as to all defendants-appellants in an opinion and order entered August 17, 1989. The court found, with respect to the qualified immunity claim, that "there is a genuine issue of material fact regarding the reasonableness of defendants' actions in both their official and individual capacities." As to the respondeat superior claim, the court found "that there is a genuine issue of material fact as to whether the alleged acts of the defendants created a policy which violated the rights of Moffitt."

Defendants thereafter moved for reconsideration of the denial of their motion for summary judgment. The district court granted reconsideration, but affirmed the prior denial. This appeal from that ruling followed.

## Discussion

■ As indicated earlier, only the Commissioners appeal from the denial of their motion for summary judgment on the basis of qualified immunity. The Town and the Commission have no entitlement to the defense of qualified immunity, and the Commissioners may assert that defense only as to the claims asserted against them in their individual, as distinguished from their official, capacities. See Hafer v. Melo, —— U.S. ——, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991).

■ As a threshold matter, we must consider whether we have jurisdiction to hear this appeal. Ordinarily, the denial of a motion for summary judgment is not an appealable "final decision[ ]" within the

meaning of 28 U.S.C. § 1291 (1988). See Pacific Union Conference of Seventh–Day Adventists v. Marshall, 434 U.S. 1305, 1306, 98 S.Ct. 2, 3, 54 L.Ed.2d 17 (Rehnquist, Circuit Justice 1977); Clark v. Kraftco Corp., 447 F.2d 933, 934 (2d Cir.1971). It was established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1224–26, 93 L.Ed. 1528 (1949), however, that certain collateral orders which cannot be effectively reviewed if review is deferred until adjudication of the entire case are immediately appealable.

■ Applying the Cohen rule to the question of qualified immunity, the Supreme Court held in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Id. at 530, 105 S.Ct. at 2817 (emphasis added). It follows that if a factual determination is necessary to the resolution of the issue of qualified immunity, immediate appeal is not permitted. See Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990); P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir. 1990). We must accordingly determine whether the allegations against the Commissioners in their individual capacities raise any disputed issues of material fact.

■ Because we are reviewing the denial of the qualified immunity claim in a summary judgment context,

we note that under Fed.R.Civ.P. 56, "factual allegations in the pleadings of the party opposing the motion for summary judgment, if supported by affidavits or other evidentiary material, should be regarded as true by the district court." Burtnieks v. City of New York, 716 F.2d 982, 983–84 (2d Cir.1983). Furthermore, while our review of the record on appeal is de novo, all "inferences to be drawn from the [underlying] facts contained in

---

**4.** The caption of Moffitt's amended complaint so specifies. The body of the amended complaint, on the other hand, states that the five Commis- sioners are sued individually and in their official capacities, but does not make this statement regarding Anderson, Fortmiller, or Lucas.

the affidavits, attached exhibits, and depositions submitted below ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

*Dube v. State Univ. of New York*, 900 F.2d 587, 597 (2d Cir.1990) (alteration in original) (citations partially omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).

The doctrine of qualified immunity provides that:

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991) (same). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 457 U.S. at 819 & 818, 102 S.Ct. at 2739 & 2738).

In the abstract, the law of procedural due process was "clearly established" at the time of the alleged violations. More precisely, furthermore, it had been clearly established that a contract may vest a right or interest that requires due process protection, *see Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972), and that "[b]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* at 570 n. 7, 92 S.Ct. at 2705 n. 7 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)).

■ The question presented on this appeal is whether a reasonable police commissioner would have understood that his action or inaction, as established by the evidence of record considered in the light most favorable to Moffitt, arguably violated Moffitt's constitutional right to be free from deprivations of property without due process. *See Mahoney v. Hankin*, 844 F.2d 64, 68 (2d Cir.1988) (applicable standard is that of a reasonable official). The collective bargaining agreement between the Town and the police union to which Moffitt belonged guaranteed that he could not be fired without just cause. Accordingly, Moffitt had a property interest in his employment that qualified for the protections of procedural due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985).

■ Moffitt predicates the Commissioners' liability on two theories. First, Moffitt alleges in his amended complaint that the Commissioners knew, or should have known, of the events of April 26, 1987 before, on, or shortly after April 26, 1987, and has provided some evidence in support of that allegation. More to the present point, however, the Commissioners have addressed this issue only by denying this allegation in their answer to Moffitt's amended complaint, and by a reiterated one-word denial to a request by Moffitt for an admission that the Town "knew of" the pertinent activities of the Department and its representatives, Anderson, Fortmiller, and Lucas. The Commissioners adduced no support, in the materials submitted in support of their motion for summary judgment, for the denial in their answer concerning this allegation.

Second, Moffitt claims that the Commissioners failed to accord him the hearing required by due process in refusing to hear his appeal regarding an allegedly coerced resignation. As previously noted, Moffitt put the Commission on explicit notice that the pertinent collective bargaining agreement barred his termination without just

cause, and that he was asserting a violation of his federal constitutional rights. Further, he provided them with a detailed account of the meeting that led to his allegedly coerced resignation.

The Commissioners contend, in response, that the primary thrust of Moffitt's claim and the district court's ruling runs against Anderson, Fortmiller, and Lucas. This may be so, but there is no inconsistency with an assertion of legal responsibility on the part of the Commissioners, as well. In effect, the Commissioners argue that Moffitt has failed to establish, even to the minimal extent required to avoid summary judgment, their personal involvement in the alleged section 1983 violation. The issue of personal involvement relates both to the Commissioners' alleged knowledge of the actions of Anderson, Fortmiller, and Lucas, and to the Commissioners' response to the appeal filed by Moffitt with the Commission regarding his allegedly coerced resignation.

"In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *see generally Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065–66 (2d Cir.1989). Additionally, however, we have ruled that:

A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.[5]

*Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

Personal involvement of the Commissioners may be premised upon their alleged knowledge of the activities of Anderson, Fortmiller, and Lucas, and a resulting direct participation therein. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989). Alternatively, it may be based upon their having learned of a violation by Anderson, Fortmiller, and Lucas as a result of Moffitt's appeal, and having failed to remedy the wrong.

The Commissioners' personal involvement in Moffitt's termination is a genuine issue of material fact within the meaning of Fed.R.Civ.P. 56(c) on the record presented on this appeal. *See Williams*, 781 F.2d at 323 (personal involvement a question of fact); *cf. Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984) (state of mind traditionally an issue for the trier of fact). Furthermore, defendants-appellants have effectively conceded that there are such issues regarding the actions of Anderson, Fortmiller, and Lucas in procuring Moffitt's resignation. This is an additional reason to sustain the district court's refusal to grant summary judgment regarding the Commissioners' alleged participation in those actions, and their peremptory dismissal of Moffitt's appeal of his termination.

Because the resolution of the qualified immunity defense involves disputed questions of material fact, we conclude that the district court's refusal to grant summary judgment to the Commissioners (in their individual capacities) on their claim of qualified immunity is not a final decision from which an appeal can be taken pursuant to 28 U.S.C. § 1291 (1988). It obviously follows that there is no occasion to address the appeal of the Town and the Commission as an exercise of pendent appellate jurisdic-

---

5. The Supreme Court has since made clear that section 1983 liability may not be premised upon negligence. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *see also City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (*deliberate indifference* to need for training may constitute municipal policy providing basis for section 1983 liability).

tion. We of course intimate, and have, no view concerning the outcome of Moffitt's claims against any defendant after trial.

## Conclusion

The appeal is dismissed for lack of appellate jurisdiction.