**Tammy YOUNG, Plaintiff,**

v.

**COUNTY OF FULTON; Fulton County Department of Social Services; Karen Hasenfuss, Kathleen Pape, and Penny Lockwood, Individually and in their official capacity as employees of the County of Fulton; Jeanne D. Johannes, Individ-**

**ually and in her official capacity as Commissioner of the Department of Social Services of Fulton County; and John Doe and Jane Doe, unknown employees of the County of Fulton, Defendants.**

**No. 94–CV–1463.**

United States District Court, N.D. New York.

April 6, 1998.

---

Joseph B. Pachura, Jr., Utica, NY, V. Michael Liccione, Utica, NY, for Plaintiff.

Horigan, Horigan, Pennock & Lombardo, P.C., Amsterdam, NY, for Defendant County of Fulton; Timothy Horigan, of counsel.

Brennan & Rehfuss, P.C., Albany, NY, for Defendants; Stephen J. Rehfuss, of counsel.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that her due process rights were violated under the First, Fifth, and Fourteenth Amendments to the United States Constitution.[1] Defendants, now move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), or in the alternative,

---

1. Initially the plaintiff's suit was on behalf of herself and her three children. However, subsequent to the filing of the action, the children's causes of action settled.

for summary judgment in accordance with Fed.R.Civ.P. 56.[2]

The municipal defendants, the County of Fulton and the Fulton County Department of Social Services ("DSS"), maintain that there is no evidence of any custom, policy, or practice which resulted in a deprivation of plaintiff's constitutional rights. The individual defendants claim that they are immune from liability as a result of the qualified immunity doctrine. Thus, the defendants move to have the plaintiff's complaint dismissed in its entirety. Oral argument was held and decision was reserved.

## II. FACTS

This action was initially filed on November 15, 1994. However, the controversial events in question involve a period of time between September 13, 1993, and October 21, 1993. It is alleged that during this period the plaintiff was wrongfully denied her right of visitation with her children. Specifically, on September 13, 1993, the plaintiff was advised that visitation had been suspended pending future psychological evaluations of the children. In response, the plaintiff filed a petition with the Fulton County Family Court ("Family Court") seeking to enforce her visitation rights, and on October 21, 1993, the Family Court ordered that visitation resume. Consequently, the plaintiff alleges in her complaint that her constitutional rights have been violated.

On February 1, 1988, the plaintiff gave birth to twin boys ("twins"). Within approximately twenty-two months, on December 27, 1990, DSS filed a neglect petition charging the plaintiff with parental neglect of the twins. Levied with a neglect petition, on August 7, 1991, the plaintiff admitted to the charges under section 1012(f) of the Family Court Act. As a consequence, the plaintiff and her husband were placed under the supervision of DSS for a period of one year beginning August 7, 1991, and ending on August 7, 1992. Sometime before the expiration of the DSS supervision, the plaintiff and

her husband had another child, separated, and later divorced.

On September 16, 1992, plaintiff voluntarily placed her twins in foster care, ostensibly for the purpose of helping the twins and assisting her with the ability to cope with the twins' violent nature. Allegedly, the twins' aggression was directed at various individuals, including a younger sibling. Therefore, on September 16, 1992, one twin was placed in an independent foster home, while the other twin was placed the following day with one of the defendants, Karen Hasenfuss ("Hasenfuss"), a parental aid and foster parent. Nevertheless, on September 29, 1992, DSS filed another neglect petition, this time charging the plaintiff with neglect of all three children. The petition, signed by defendant Jeanee D. Johannes ("Johannes"), the Commissioner of DSS, set forth a number of instances and acts allegedly involving neglect on the part of the plaintiff with respect to her three children.

Again, on March 9, 1993, for the second time, the plaintiff admitted that she was guilty of the charge of neglect. Therefore, the Family Court ordered that the twins be placed in the custody of DSS for one year beginning on March 9, 1993, and ending on March 9, 1994. In addition, the plaintiff was directed that she would be under the supervision of DSS. During this period, defendant Kathleen Pape ("Pape"), an employee with the DSS, was assigned as plaintiff's caseworker. While Hasenfuss continued to be plaintiff's parental aid until March 9, 1993, she nevertheless remained a foster parent to one of the twins pursuant to the September 16, 1992 placement. Eventually, in December 1992, both twins were reunited and under the care of foster parent Hasenfuss.

Beginning on July 21, 1992, and continuing biweekly until January 5, 1994, defendant Penny Lockwood ("Lockwood"), a caseworker employed by DSS, began counseling the infant twins. Throughout this period, the plaintiff had both supervised and unsupervised visitation with the children. Regard-

2. As a result of the extensive depositions, affidavits, and documentation submitted, all outside the pleadings, the defendants Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment. See Fed.R.Civ.P. 12(b); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

less, the plaintiff requested to extend her visitation privileges with her children. However, it is alleged that on August 9, 1993, Pape denied the plaintiff's request for more extensive visitation, finally notifying the plaintiff on September 2, 1993, that permanent neglect proceedings would be filed in order to keep the twins in foster care. Moreover, it is alleged that Pape again notified the plaintiff on September 13, 1993, informing her that visitation between the plaintiff and the twins would be suspended until the twins underwent a psychological examination. On October 5, 1993, following the plaintiff's unsuccessful attempt to speak with the twins over the telephone, Lockwood advised plaintiff that visitation had been suspended pending the Family Court's decision with respect to DSS's permanent neglect petition. As a result, the plaintiff filed the petition in the Family Court seeking to enforce her visitation rights.

On October 21, 1993, concurrent with the initial hearing held in the Family Court, Judge David F. Jung directed that plaintiff's visitation rights be reinstated and she be allowed to visit with the her children. Jung's directive was based on the fact that the DSS had failed to comply with the regulations requiring that DSS first seek a court order prior to suspending the plaintiff's visitation rights. 18 NYCRR § 430.12(1997). Currently, the plaintiff has custody of all three of her children. Therefore, the issue is whether the defendants' failure to comply with the state law and regulations constitute a violation of the plaintiff's Federal constitutional due process rights.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–249; *Matsushita Elec. Indus., Co.,* 475 U.S. at 587. Thus, summary judgment is proper where there is "little or no evidence … in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### B. *County of Fulton and DSS*

Neither the allegations against the County of Fulton or the DSS in the complaint, nor the evidence submitted in opposition to this motion, set forth any viable claims against said defendants. To prevail on such causes of action, the plaintiff would be required to plead and prove that any violations of her constitutional rights were committed pursuant to an official government policy. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff has neither pleaded such facts, nor set forth any evidence of a custom or policy demonstrating a violation of the plaintiff's constitutional rights when the County of Fulton or DSS failed to seek a court order prior to having the plain-

tiff's visitation rights suspended. *See Zappala v. Albicelli,* 954 F.Supp. 538, 547 (N.D.N.Y.1997).

The numerous conclusory allegations that the individual defendants engaged in a conspiracy to deprive the plaintiff of such rights, even assuming that such a conspiracy existed for the purpose of this motion, is no evidence that such acts constituted an official policy, custom, or practice of the municipal defendants. In any event, such actions on behalf of the individual defendants would be beyond the scope of their employment and authority, and could not be imputed to the municipal defendants. As a result, the action will be dismissed against the County of Fulton and DSS. *See Reynolds v. Strunk,* 688 F.Supp. 950, 959 (S.D.N.Y.1988).

### C. *Qualified Immunity Standard*

■ The doctrine of qualified immunity protects government officials from suits against them in their individual capacity for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Three factors are utilized to determine whether a right was clearly established: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the Appellate Circuit Court support the existence of the right in question; and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). Even if a right is clearly established, "the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the estab-

lished prohibition." *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996).

■ The individual defendants, claiming that they are entitled to the privilege of qualified immunity, have moved for summary judgment and dismissal of the complaint in its entirety. With respect to Hasenfuss, she acted as the plaintiff's homemaker, parental aid, and the foster parent to the twins. There is no evidence that she denied the plaintiff's right to visitation between September 13, 1993, and October 21, 1993. Consequently, the evidence does not demonstrate that Hasenfuss was personally involved in the alleged deprivation of plaintiff's constitutional rights. Such circumstances alone would entitle Hasenfuss to dismissal of the complaint. However, it is apparent from the doctrine of qualified immunity, that Hasenfuss is entitled to summary judgment dismissal of the plaintiff's complaint as against her.

■ At the time her visitation privileges were denied, the plaintiff did not have custody of the twins because she had agreed to place them in foster care. It is without question that parents have a constitutional right to the custody of their children. *See Hodgson v. Minnesota,* 497 U.S. 417, 484, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990). As a consequence, it is clearly established that a mother enjoys a constitutionally protected liberty interest in the custody of her children, affording a pre-deprivation hearing pursuant to due process of law. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)(citing *Stanley v. Illinois,* 405 U.S. 645, 649–58, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). However, as equally clear is the well established principle allowing government officials to effect a temporary deprivation of a parent's custody, absent parental consent or court order, where presented with an exigency or emergency situation. *Robison,* 821 F.2d at 921.

■ The plaintiff has failed to set forth even one case which establishes that visitation, as opposed to custody, is a constitutionally protected liberty interest of a parent

who does not have custody.[3] Without a clearly established right of which a reasonable person would have known, the defendants Pape, Lockwood, Johannes, and Hasenfuss, are therefore immune from liability under qualified immunity doctrine. Although they may have failed to comply with the requirements of New York state law and the applicable regulations providing that a denial of visitation rights be preceded by a court order, the conclusion remains unchanged. The question presented is not whether the individual defendants violated state law, but whether they violated plaintiff's federal constitutional or statutory rights. *See Doe v. Connecticut Dep't of Child Youth Services,* 911 F.2d 868, 869 (2d Cir.1990); *see also Davis v. Scherer,* 468 U.S. 183, 194 n. 2, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon.").

Finally, plaintiff has made a number of allegations that the individual defendants were engaged in a conspiracy to take the twins from her permanently. The plaintiff has offered no evidence, only conclusions to support this claim, which, as noted above, is not sufficient to successfully defeat a summary judgment motion.

### IV. CONCLUSION

Accordingly, it is

ORDERED, that

1. The defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is GRANTED; and

2. The Clerk is directed to enter judgment dismissing the complaint in its entirety against all defendants.

IT IS SO ORDERED.

---

3. Even if the plaintiff had shown that a visitation right had been clearly established between September 13, 1993, and October 21, 1993, the circumstances indicate that it was objectively reasonable for the individual defendants to be-

lieve that a temporary suspension of plaintiff's visitation was warranted considering the sufficient evidence of an emergency situation. *See Robison,* 821 F.2d at 921.