Tammy YOUNG, Individually and as parent and natural guardian of infants Matthew Young, Michael Young and Nicole Young, Plaintiff–Appellant,

v.

COUNTY OF FULTON, Fulton County Department of Social Services, Karen Hasenfuss, Individually and in her official capacity as an employee of the County of Fulton, Kathleen Pape, Individually and in her official capacity as an employee of the County of Fulton, Penny Lockwood, Individually and in her official capacity as an employee of the County of Fulton, Jeanne D. Johannes, Individually and in her official capacity as Commissioner of the Department of Social Services of Fulton County, John Doe, unknown employee of the County of Fulton, and Jane Doe, unknown employee of the County of Fulton, Defendants–Appellees.

**No. 754, Docket No. 98–7559**

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1998.

Decided Nov. 16, 1998.

---

V. Michael Liccione, Whitesboro, NY (Bond Schoeneck & King, Syracuse, NY, on the brief), for Plaintiff–Appellant.

Stephen J. Rehfuss, Albany, NY, (Brennan & Rehfuss, P.C., on the brief) for Defendant-Appellee County of Fulton.

Timothy Horigan, Amsterdam, NY (Horigan, Horigan & Lombardo, P.C. on the brief), for Defendants–Appellees Fulton County Department of Social Services, Karen Hasenfuss, Kathleen Pape, Penny Lockwood, Jeanne D. Johannes, John Doe, and Jane Doe.

Before: NEWMAN and JACOBS, Circuit Judges and TSOUCALAS, Judge.*

JACOBS, Circuit Judge:

In September 1992 plaintiff-appellant Tammy Young voluntarily placed her twin boys in foster care under the supervision of the Fulton County Department of Social Services ("DSS"). Young brings this lawsuit under 42 U.S.C. § 1983 (1994) seeking damages against the County of Fulton, DSS, and sev-

* The Honorable Nicholas Tsoucalas, of the United States Court of International Trade, sitting by designation.

eral individual employees of DSS for allegedly denying her the right to visit her children for 39 days, without the prior hearing required by New York law. Young also argues that certain procedural failures evidence a conspiracy to take her children permanently in violation of her custodial rights.

Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or alternatively for summary judgment in accordance with Fed. R.Civ.P. 56. Individual defendants argued that they were entitled to qualified immunity because at the time of the events in this case there was no clearly established right of a parent to visit children voluntarily placed in foster care, or alternatively that their actions were objectively reasonable under the circumstances. The County and DSS argued that Young failed to make the necessary showing for municipal liability under § 1983 that the harm resulted from an official policy, custom, or practice. All defendants argued that the allegations of a conspiracy are conclusory and therefore insufficient to support a claim under § 1983. The United States District Court for the Northern District of New York (Hurd, *M.J.*), granted summary judgment: (A) for the individual defendants on the ground that there was no clearly established parental visitation right for a non-custodial parent; (B) for the County and DSS on the ground that Young could not show that the actions of the individual defendants were done pursuant to a policy, custom, or practice of the County or DSS; and (C) for all defendants on the conspiracy claim on the grounds that the allegations were conclusory. *Young v. County of Fulton*, 999 F.Supp. 282 (N.D.N.Y.1998). We affirm for the reasons stated herein.

## BACKGROUND

In reviewing the grant of summary judgment against Young, we view the facts in the light most favorable to her and draw all reasonable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### A. Facts

Young is the mother of three children. During 1989 and 1990, there were at least nine incidents of serious domestic violence between Young and her husband in which her twin boys were subjected to physical and emotional harm. On that basis DSS filed a neglect petition in the Family Court of the State of New York in December 1990. At the August 1991 hearing on this petition, Young (who was represented by counsel) admitted to negligence charges under N.Y. Fam. Ct. Act § 1012(f) (McKinney 1991). Young and her family were placed under DSS supervision for one year.

A month after the one-year period of supervision ended, Young came to DSS and voluntarily placed her twin sons in foster care. Young explained to the caseworker that she was having trouble controlling the twin boys and that they were a threat to their younger sister. The caseworker advised Young that as a result of her voluntary placement of the children in foster care, a second neglect petition would be filed. At a Family Court hearing on the second neglect petition in May 1993, the boys were ordered to be held in foster homes under DSS supervision until March 1994. The boys were originally placed in separate homes, but both were eventually placed under the foster care of defendant Karen Hasenfuss.

Young maintains that because she brought the twins to DSS voluntarily, DSS should have taken custody of the twin boys pursuant to a "voluntary petition" rather than a "neglect petition." Young claims that this was the first step in a conspiracy among DSS employees Penny Lockwood, Kathleen Pape, and Karen Hasenfuss to take custody of the boys from Young so that Hasenfuss could adopt them. According to Young, the filing of a neglect petition enabled DSS to remove the boys from her more quickly, and afforded defendant Hasenfuss (as foster parent) preference over the maternal grandparents in adoption proceedings. In support of her claim that DSS filed an improper petition, Young notes that only one of the eight alleged acts of neglect underlying the second neglect petition was recorded in the state register of child abuse, a recordation required by New York law.

During the latter part of 1993, DSS decided that the mother's relationship with the twins was continuing to deteriorate. The

boys allegedly suffered from severe emotional trauma before and after her visits. Citing this phenomenon, and the failure of Young (now divorced) to provide a stable home environment, DSS decided to take custody of the boys permanently. On September 2, 1993, Young was notified that DSS intended to file a petition to keep the children in foster care indefinitely. DSS suspended Young's visitation rights eleven days later. In a contemporaneous letter, DSS employee Lockwood (the children's counselor for nearly two years) explained that decision to caseworker Pape on the basis that the children's behavioral problems decreased after placement in the foster home, but that they were exhibiting extreme reactions of distress before and after each visit with their mother. Lockwood expressed the view, which DSS has adopted, that the denial of visitation was in the best interests of the children.

### B. State Court Proceedings

On September 21 (eight days after Young's loss of visitation privileges) DSS filed a permanent neglect petition in Family Court seeking permanent custody of the boys. Two days later, while this petition was still pending, Young filed a petition in Family Court demanding the right to visit her children. The Family Court conducted a preliminary hearing on Young's petition and, on October 21, ordered visitation to resume immediately. In December, the Family Court conducted a full hearing on the visitation dispute. The supervisor of DSS's foster care department admitted on cross-examination that although the decision to deny visitation was in the best interests of the children, the decision was made in violation of New York law. The court held that N.Y. Comp.Codes R. & Reg. tit. 18, § 430.12 required a court order before suspension of visiting rights, and ordered that the visits be permitted to resume. In light of this decision, DSS dropped its permanent neglect petition. Young eventually regained custody of her sons.

### DISCUSSION

We review a district court's grant of summary judgment *de novo*. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149 (2d Cir.1998). Summary judg-ment is appropriate only if the evidence presented shows that there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c).

The thrust of Young's argument is that the defendants violated New York law by suspending her visiting rights without due process, and that this failure: (1) constitutes the violation of a clearly established federal right; (2) shows that the individual defendants were improperly trained; and (3) evidences a conspiracy to take her children permanently without due process of law.

 The fact that DSS employees violated New York law when they denied plaintiff visitation without a prior hearing does not necessarily give rise to a federal civil rights claim. *See Doe v. Connecticut Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir.1990). The procedure mandated by state family law is not the benchmark for evaluating whether or not there has been a federal constitutional violation. "[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." *Robison v. Via*, 821 F.2d 913, 922 (2d Cir.1987). Without more, the fact that defendants violated New York procedural requirements does not support liability under § 1983.

### A. Claims Against Individual Defendants

 Magistrate Judge Hurd held that the individual defendants were entitled to qualified immunity on the claim that they deprived Young of her constitutional right to visit her children on the ground that there was no clearly established right to visitation for a non-custodial parent. *See Young v. County of Fulton*, 999 F.Supp. 282, 286–87 (N.D.N.Y.1998). We think the issue in this case is considerably narrower than the one framed by Young and decided by the Magistrate Judge. Whatever the contours of the right of a non-custodial parent to visit a child, the issue in this case concerns only whether, as a matter of federal due process, there is a right to a pre-termination hearing before visitation may be suspended, and, more particularly, whether such a procedural due process

right was clearly established at the time of the events in this case.

Government agents enjoy qualified immunity when they perform discretionary functions if either (1) their conduct "did not violate clearly established rights of which a reasonable person would have known," or (2) "it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir.1993) (internal quotations omitted) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir.1990)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In deciding whether a right was clearly established, we ask: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful? *See McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir.1997). Typically this Court puts significant weight on whether or not the law was governed by controlling precedent of this Circuit. *See Richardson v. Selsky*, 5 F.3d 616, 623 (2d Cir.1993). Even in the absence of binding precedent, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct.

There is no authority for the proposition that in 1993 a non-custodial parent had a clearly established right to a pre-termination hearing before suspension of whatever visitation rights she might have retained. Two courts that considered the issue prior to 1993 both held that federal due process requirements are satisfied by a hearing *after* termination. *See Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir.1986); *Pfoltzer v. County of Fairfax*, 775 F.Supp. 874, 881–83 (E.D.Va.1991). Young's reliance on *Aristotle P. v. Johnson*, 721 F.Supp. 1002 (N.D.Ill. 1989), is unavailing. That decision suggests that a right of familial association is a corollary of the parental custody rights announced in *Stanley v. Illinois*, 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972). *See Aristotle P.*, 721 F.Supp. at 1007–08 (upholding the right of siblings not to be separated for extended periods of time without visits to each other). The relevance of that decision to a person like Young, who voluntarily surrendered custody, is doubtful, but in any event, that decision did not begin to describe the contours of a parental visitation right and did not remotely establish a procedural right to a prior hearing before visitation could be suspended. Young cites no other authority for her argument. We hold that in 1993 Young had no clearly established right to a prior hearing before whatever visitation rights she might have had could be temporarily denied, and that the individual defendants therefore are entitled to qualified immunity.

## B. Claims Against Entity Defendants

The district court dismissed Young's *Monell* claim against the County of Fulton and DSS because her allegations failed to establish that she suffered any deprivation of her rights by reason of an official policy, custom, or practice of the County or DSS. *See Young*, 999 F.Supp. at 285–86 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). We agree with the district court and affirm on that ground.

Young urges vigorously on appeal that the DSS employees failed to comply with the procedural requirements of New York law, and that this non-compliance demonstrates a failure to train under *Monell*. This argument is not addressed in the district court opinion.

A claim for failure to train will trigger municipal liability only where "the failure to train amounts to deliberate indifference to the rights" of those with whom the state officials will come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In *Walker v. City of New York*, 974 F.2d 293 (2d Cir.1992), this Court listed three showings required to support a claim that a municipality's failure to train amounted to "de-

liberate indifference" of the rights of citizens: (1) that "a policymaker [of the municipality] knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker*, 974 F.2d at 297–98 (citation omitted). Under the *Walker* test, a claim for failure to train cannot be sustained unless the employees violated a clearly established federal constitutional right. *See Watson v. Sexton*, 755 F.Supp. 583, 588 (S.D.N.Y.1991) ("To be 'deliberately indifferent' to rights requires that those rights be clearly established."). We therefore affirm the dismissal of the *Monell* claim against the County and DSS.

### C. Conspiracy Claim

Finally, as to the claim that the County of Fulton and DSS conspired with the individual defendants to deprive Young of permanent custody, the district court held that Young's purely conclusory pleadings were insufficient to withstand a motion for summary judgment. Specifically, as to the individual defendants, the district court could identify no particular fact in support of a conspiracy claim. *See Young*, 999 F.Supp. at 287. As for the County and DSS, the district court found that there was no evidence suggesting that the conspiracy, if it existed, was undertaken pursuant to a policy, custom, or practice of the County or DSS, and that in any event, the acts of the individual defendants were beyond the scope of employment and could not be imputed to the County and DSS. *See Young*, 999 F.Supp. at 286.

In her affidavit opposing summary judgment, Young alleged that defendants misused their authority to file a petition to deprive Young of custody, and advanced the following proof that they were motivated by selfishness or malice. First, although Young conceded that her visits caused the twins distress, she argued that the twins "had exhibited this 'problem' behavior before they went into foster care," and implied that DSS had a responsibility to help her overcome her own parental deficiencies. Second, DSS did not suspend visits by her ex-husband or his parents despite the fact that the twins allegedly had problems before and after all family visits. Finally, Young claims that the permanent neglect petition falsely alleged that DSS made "diligent efforts to encourage and strengthen the parental relationship," and that Young "failed for a period of more than one year following the date the children came into the care of [DSS] ... substantially to ... plan for the future of the children although physically and financially able to do so." Young offered evidence that she attended various counseling at the behest of DSS and pointed out that the permanent neglect petition did not allege how Young failed to satisfy the obligations imposed on her by the second neglect petition. Young contends that her compliance with the second neglect petition shows that DSS and the individual defendants had an improper motive in filing the permanent neglect petition.

This evidence against the individual defendants is thin at best, and amounts to nothing as against the County and DSS, but we need not address these issues point by point, because we can affirm the district court ruling on an independent ground.

■■■■ Unquestionably there is a constitutional right to custody of one's children. *See Stanley*, 405 U.S. at 652, 92 S.Ct. at 1213; *Robison*, 821 F.2d at 921. But Young voluntarily relinquished temporary custody, and was never denied permanent custody. The effort to deprive Young of permanent custody, which she alleges was a conspiracy, began with the filing of an allegedly improper permanent neglect petition. Until DSS dropped the petition, proceedings were moving along the normal procedural channels established by New York law, which Young does not challenge under the federal Constitution. There was no deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) ("[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.").

## CONCLUSION

The judgment of the district court is hereby affirmed.