John THOMAS, Plaintiff

v.

Richard L. ZAHAREK, Defendant

No. CIV.A. 3:99CV1600CFD.

United States District Court,
D. Connecticut.

Oct. 20, 2003.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

Jane R. Rosenberg, Matthew I. Levine, Attorney General's Office, Hartford, CT, Scott M. Karsten, Sack, Spector & Karsten, West Hartford, CT, for Defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, John Thomas, brought this action under 42 U.S.C. § 1983 against the

defendant, Richard Zaharek, claiming that he was deprived of a property and liberty interest without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution when he was demoted and suspended without pay from his position in the Litchfield County Sheriff's Department. Thomas seeks compensatory and punitive damages, costs and attorney's fees, and an injunction reinstating his employment with back pay.

The defendant has filed a motion for summary judgment, which is considered here [Doc. # 28].

## I. Facts [1]

In April 1988, John Thomas was appointed a special deputy sheriff in the Litchfield County Sheriff's Department. In December 1995, Richard Zaharek became the High Sheriff of Litchfield County. Under Sheriff Zaharek's command, Thomas was promoted to the positions of sergeant, lieutenant, and then captain.[2]

Throughout Thomas's time as a special deputy sheriff, he maintained additional part-time employment. In 1997, he began working as a bartender for Michael's Restaurant in Kent, Connecticut. On March 27, 1998, the owner of Michael's Restaurant informed Thomas of allegations that Thomas had exposed himself to a customer of the restaurant, Laurie Potter ("Potter"), and had made inappropriate sexual advances toward a co-worker of the restaurant, Tammy Weeks ("Weeks"). Believing

he was required to inform the Sheriff's department of these allegations, Thomas subsequently disclosed them to Sheriff Zaharek. Zaherek told Thomas that Thomas's employment could be in jeopardy if they were true. Thomas denied all of the allegations to Zaherek.

Thomas then retained an attorney and, through his attorney, resigned his employment at Michael's Restaurant. Thomas informed Zaherek of that resignation.

Zaherek subsequently received sworn statements from Potter and Weeks in which they stated that Thomas had exposed himself in the restaurant and suggested sexual relations. Zaherek turned the statements over to the statewide Office of the County Sheriffs in Hartford and the State's Attorney.[3] He also informed Thomas of those statements.

On October 3, 1998, Eileen Meehan, the Assistant Director of the Office of the County Sheriffs, sent a memorandum to Thomas notifying him that the allegations against him were being investigated. Subsequently, Thomas met with Meehan, at his request and without his lawyer, to discuss the memorandum. At that meeting, Thomas was given an opportunity to review the statements of Potter and Weeks. Thomas denied the conduct contained in those statements.[4]

As part of the investigation, Meehan interviewed Potter, Weeks, the owner of Michael's Restaurant, the local First Se-

---

1. The following facts are taken from the parties' Local Rule 9(c) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

2. There are no statutory provisions which set forth the various ranks of special deputy sheriffs. Footnote 13, *infra*, describes the duties of special deputy sheriffs. As described in more detail in footnote 8, *infra*, the county sheriff system was abolished in Connecticut

since the events leading to this action occurred.

3. There is no evidence that Thomas was prosecuted by the State's Attorney.

4. Throughout his deposition, Thomas states that at the October meeting he denied the allegations "as they [were] written." Thomas Dep. at 80, 82, 84.

lectwoman, a former High Sheriff, and other individuals. On January 12, 1999, Meehan sent a memorandum to Thomas advising him that the investigation found that he had "exposed [him]self to two women on three separate occasions while working as a bartender."[5] The memorandum stated that the Sheriff's Office found him to have "engaged in conduct unbecoming of a member of the Litchfield County Sheriff's Office in violation of the Office of County Sheriffs Code of Conduct Standard F–2 which states that 'Appointees shall not engage in unprofessional or illegal behavior, on or off duty, that could reflect negatively on the Office of the County Sheriffs or on the High Sheriff of the County.'" The memo also stated that a meeting would be held the next day at which "you will be provided with the information gathered during the investigation. You will have the opportunity to provide additional information and to rebut the information gathered to date." Ex. 8, Mem. of Law in Supp. of Def.'s Mot. for Summ. J.

On January 13, 1999, without his attorney, Thomas met with Meehan and Zaharek, again reviewed the written statements, and continued to deny the allegations. At the conclusion of the January 13, 1999 meeting, Thomas was told that he was being placed on paid administrative leave until the matter was resolved. A final determination on the charges was postponed so that Thomas could have his attorney with him.

On January 27, 1999, Thomas and his attorney met with Meehan and Zaharek. During the course of the January 27, 1999 hearing,[6] Thomas and his attorney were given another opportunity to provide a defense to the allegations. At this time, Thomas admitted that sexual contact with Potter and Weeks had taken place in the restaurant, but not as they had set forth in their statements.[7]

On April 15, 1999, Meehan wrote to Thomas's attorney to schedule another session to discuss the allegations against Thomas and the discipline under consideration.[8]

On May 5, 1999, a final hearing was held by Meehan and Zaharek on the allegations against Thomas at which both Thomas and his attorney were present. At the conclusion of the hearing, Thomas was informed by Zaharek that he was suspended without pay and demoted from his position as captain. He was also informed that Meehan had recommended that he be terminated, but that Zaherek determined that a suspension and demotion were more appropriate. Zaherek also told Thomas that he would be eligible for future promotions.

On May 11, 1999, Zaherek issued a memorandum to Thomas detailing the final outcome of the investigation and outlining

---

5. Meehan's memo also stated that, apart from the conduct involving Weeks and Potter, the investigation found that Thomas "behaved in a similar manner" as to another woman while he was off duty. It appears that this woman was "Kelly Keys" or "Kellie Kayea," but no sworn statement was obtained from her. However, Thomas was able to review a document regarding an interview with "Kelly Keys" and a fourth complaining person.

6. The parties variously refer to the series of sessions with Meehan and Zaharek as meetings or hearings. For the purpose of this opinion, the sessions which involved Thom-

as's lawyer, January 27 and May 5, will be referred to as hearings, and the other sessions as meetings.

7. *See* Thomas Dep. at 108–11.

8. In that letter, Meehan also charged Thomas with additional violations of the Office of County Sheriffs Code of Conduct in connection with his entering the Litchfield County courthouse and removing documents after having been told that he was not allowed to enter the courthouse.

the disciplinary action taken against him.[9] Thomas was suspended without pay for thirty consecutive working days from May 6, 1999 through June 17, 1999 and for fifteen additional days to be served on consecutive Wednesdays and Thursdays beginning June 23, 1999 and ending August 11, 1999. He was demoted from the rank of captain to special deputy sheriff, effective May 6, 1999, and was ordered to serve a probationary period until February 11, 2000.[10]

On August 27, 1999, pursuant to 42 U.S.C. § 1983, Thomas filed the instant action, claiming that Zaharek deprived him of a property and liberty interest without due process in violation of the Fourteenth Amendment to the U.S. Constitution. Specifically, Thomas claims that although he was given the opportunity to explain his actions at the pre-discipline meetings and hearings, he was not permitted to confront or question Potter and Weeks. He also claims that he was denied a post-discipline hearing, and had no opportunity to appeal the disciplinary action against him.[11]

Zaharek has filed a motion for summary judgment on the bases that: (1) Thomas has failed to establish that he had a property interest in not being suspended and not being demoted from the rank of captain; (2) Zaharek provided Thomas with all the process he was due; (3) Thomas was not deprived of any liberty interest; and (4) Thomas's claims are barred by qualified immunity.

## II. Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .' " *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v.*

9. Thomas was found in violation of standard F–2 of the Code of Conduct for engaging in unprofessional behavior, as well as in violation of standard A–25 for not cooperating or being truthful in the investigation because of his initial complete denial of the allegations by Potter and Weeks.

10. In December 2000, Connecticut abolished its county sheriff system and instituted a state marshal system in its place. Deputy sheriffs became state marshals governed by the State Marshal Commission, and special deputy sheriffs became judicial marshals governed by the State Judicial Department. State marshals retained the authority to serve legal papers and judicial marshals continued to secure courthouses and guard and transport prisoners. Conn. Gen.Stat. §§ 6–38a, 6–38f, 6–38i (2000). *See* Footnote 13, *infra*, for a description of the different duties of deputy sheriffs and special deputy sheriffs. Thomas is presently employed as a state marshal in the Litchfield Judicial District.

11. On July 12, 2001, this Court granted Zaharek's motion to dismiss all claims against him in his official capacity. Only Thomas's individual capacity claims for damages remain in this case.

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas. Inc.,* 953 F.2d 780, 788 (2d Cir.1992). Additionally "[w]here, as here, the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548 and *Tops Mkts.,Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir.1998)).

## III. Discussion

The Court will first address whether Thomas's claims against Zaharek are barred by the doctrine of qualified immunity.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). According to the Second Circuit:

> Our analysis of a qualified immunity claim consists of a three step inquiry. First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct. Finally, if plaintiff had a clearly established, constitutionally protected right that was violated ..., he or she must demonstrate that defendants' actions were not objectively reasonable. This three step inquiry should typically be done in sequential order. Defendants may benefit from qualified immunity if plaintiff is unable to establish any of these three steps. Thus, if there is no deprivation of a constitutional right alleged by [the plaintiff] (the first step), there is no need for the court to decide if the right was clearly established at the time [of the adverse employment action] (the second step).

*Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211–12 (2d Cir.2003) (internal citations omitted).

Thus, the first step in the qualified immunity inquiry is to ascertain whether Thomas has established a violation of a constitutional right. *See id.* In analyzing Thomas's Fourteenth Amendment claims that he was deprived of property and liberty without due process, the Court must first determine whether Thomas had such interests and then determine whether he received adequate process before being deprived of them. *See Ciambriello v. Cty., of Nassau,* 292 F.3d 307, 313 (2d Cir.2002).

### A. Property Interest

■ Property interests under the Due Process Clause are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "A public employee has a property interest in continued em-

ployment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello,* 292 F.3d at 313 (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Further, "[w]hile state law determines whether a public employee has a property interest in continued employment, 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *Id.* (quoting *Ezekwo v. NYC Health & Hosps. Corp.,* 940 F.2d 775, 782 (2d Cir.1991)).

■ Thomas claims that his demotion from captain to special deputy sheriff and suspension without pay for forty-five days constituted deprivations of property interests. Those employment actions implicate constitutionally protected property interests if state law protected against interference without just cause or without notice. The property interests must also have been of significant importance to Thomas to warrant constitutional protection. *But see* Erwin Chemerinsky, *Constitutional Law Principles and Policies* § 7.3.2, at 536–37 (2d ed.2002) (describing tension between defining property interest on basis of "reasonable expectation" or "importance of the benefit").

In 1993, then District Judge Cabranes held that special deputy sheriffs lacked a property interest in their continued employment under the statute that then governed their positions, Connecticut General Statute § 6–43. *See St. George v. Mak,* 842 F.Supp. 625, 634–35 (D.Conn.1993). That statute was amended in 1995, however, to create a protection against termination without just cause. The legislature added the following language to effect that change: "[S]pecial deputies shall continue to hold their office as long as the term of the office of the sheriff appointing them, unless sooner removed for just cause after due notice and hearing." Conn. Gen.Stat. § 6–43 (1995). Thus, at the time of Thomas's demotion and suspension, Conn. Gen. Stat. § 6–43 provided[12] in pertinent part:

In case of riot or civil commotion or reasonable apprehension thereof, or when he deems it necessary for the prevention or investigation of crime, or when needed for attendance at court, the sheriff of any county may appoint special deputy sheriffs in such numbers as he deems necessary. Special deputy sheriffs shall be sworn to the faithful performance of their duties and, having been so sworn, shall have all the powers of the sheriff as provided by law, except as to service of civil process; and such special deputies shall continue to hold their office as long as the term of the office of the sheriff appointing them, unless sooner removed for just cause after due notice and hearing.

Conn. Gen.Stat. § 6–43 (1998).[13]

Though it is apparent from the language in the statute that special deputy sheriffs had a property interest against *termi-*

---

**12.** Because of Connecticut's change to a marshal system, the statutory provisions regarding sheriffs were amended and/or repealed following Thomas's demotion and suspension. The Court will analyze Thomas's due process claims under the provisions in effect at the time of his demotion and suspension. The parties do not dispute that these provisions apply.

**13.** The system that evolved in Connecticut included the High Sheriff, Deputy Sheriffs, and Special Deputy Sheriffs. Deputy Sheriffs and Special Deputy Sheriffs were appointed by the High Sheriff. Deputy Sheriffs were empowered to serve civil process, but Special Deputy Sheriffs did not have that power. As a result, Special Deputy Sheriffs were principally responsible for courthouse security and transportation of prisoners, while Deputy Sheriffs were principally engaged in service of legal papers.

*nation,* neither Connecticut state courts nor federal courts within this district have interpreted whether Conn. Gen.Stat. § 6–43 created property interests against demotion or suspension without pay. Interpreting this statute and specifically the "property interest" question, this court has found that a special deputy sheriff who was re-assigned to part-time work by his supervisor did not have a property interest in the number of hours he worked. *See Blanchette v. Kupchunos,* 116 F.Supp.2d 325, 328 (D.Conn.2000). According to the court, "[a]lteration, reduction, or elimination of the hours an individual special deputy sheriff is assigned to carry out specific duties as such does not constitute removal from office." *Id.* The court stated that while "[a] High Sheriff is not authorized to reduce, nor remove, the powers granted to special deputy sheriffs except for just cause after notice and hearing," the Sheriff had the authority to set work schedules and determine full and part-time assignments. *Id.* The court found such authority implicit in the broad discretion granted to the High Sheriff in his employment decisions. *See id.* at 329 ("The legislature has given High Sheriffs, such as defendant, considerable discretion in the appointment and utilization of special deputy sheriffs."). Here, Thomas has not set forth any evidence that his demotion from captain constituted a reduction in the *powers* granted

him as a special deputy sheriff. Conn. Gen.Stat. § 6–43 granted special deputy sheriffs "all the powers of the sheriff as provided by law, except as to service of civil process." Conn. Gen.Stat. § 6–43 (1998). The powers of the sheriff were enumerated in Conn. Gen.Stat. § 6–31 and included "conserv[ing] the peace," and "suppress[ing] all tumults, riots, unlawful assemblies and breaches of the peace." Conn. Gen.Stat. § 6–31 (1998). After his demotion, Thomas retained all the statutory powers that he previously held as a special deputy sheriff with the captain's rank.[14]

■ Moreover, though courts have held that the Fourteenth Amendment "protects a property interest in a particular position or rank" when the relevant state law protects against "discipline" without just cause, *see, e.g., Ciambriello,* 292 F.3d at 318, here, Conn. Gen.Stat. § 6–43 protects only against removal without cause or deprivation of powers without cause. Thomas's demotion did not deprive him of any of the powers granted to special deputy sheriffs by the relevant statutory provisions. Thus, Conn. Gen.Stat. § 6–43 did not create a property interest in Thomas's rank as captain. Nor has Thomas set forth any evidence indicating that his right to his rank was otherwise protected by state law or contract.[15] Accordingly, the Court con-

**14.** As previously mentioned in footnote 2, *supra,* no ranks of special deputy sheriffs were provided by statute, but appear to have been created to reflect supervisory responsibility. Based on Thomas's deposition, the Court assumes that supervising special deputy sheriffs received ten dollars more per day for their work.

**15.** Thomas also argues that the Office of the County Sheriffs' Ethics Statement and Code of Conduct (hereinafter, the "Code of Conduct") created a property interest in his rank as captain and his status as a special deputy sheriff. While a property interest in employ-

ment can be created by local ordinance or by implied contract, *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Code of Conduct neither makes reference to the ranks of special deputy sheriffs nor creates any property interest in such ranks. It also fails to graft onto the protection of Conn. Gen.Stat. § 6–43 any additional tenure protections for special deputy sheriffs. Furthermore, the sufficiency of the claim of entitlement must be decided by reference to state law. *Bishop,* 426 U.S. at 344, 96 S.Ct. 2074. *See also Goetz v. Windsor Central Sch. Dist.,* 698 F.2d 606, 608 (2d Cir.1983). Thus, even if the Code of Conduct represented some

cludes that Thomas has not established that his interest in his rank of captain was a property interest protected by state law and the Fourteenth Amendment.

■ Thomas's forty-five day suspension without pay, however, is more comparable to removal or a reduction in powers granted to special deputy sheriffs and thus is distinguished from the mere change in hours in *Blanchette,* and the demotion from his captain's rank. Thomas was "removed" from his position as special deputy sheriff for forty-five days. This suspension removed his ability to carry out his powers as a special deputy sheriff for that extended period. Additionally, the suspension deprived him of an appreciable amount of pay. Accordingly, Thomas's forty-five day suspension without pay appears to constitute a deprivation—albeit a temporary one—protected by Conn. Gen. Stat. § 6–43.

■ The suspension also appears to be of enough importance to Thomas to warrant constitutional protection. Though this court has held that a one-week suspension of a public employee without pay does not implicate a property interest protected by the Due Process Clause, *see Larsen v. Lynch,* No. 3:95CV302(AWT), 1998 WL 229919 (D.Conn.1998) (finding that public employee lacked property interest in one week suspension without pay), a forty-five day suspension is considerably more substantial. *See Narumanchi v. Bd. of Trustees of Ct. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988) (approving district court's finding that a two-week suspension without pay constituted a property interest); *cf. Gilbert v. Homar,* 520 U.S.

924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (assuming, without deciding, that a suspension without pay infringed a protected property interest, though that point had not been contested). Additionally, though a suspension without pay is "much less severe than the deprivation caused by a discharge ... 'the length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of a hearing, is not decisive of the basic right to a hearing of some kind.'" *Garraghty v. Jordan,* 830 F.2d 1295, 1299 (4th Cir.1987) (quoting *Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (internal quotation marks omitted)). "So long as a deprivation is not de minimis, 'its gravity is irrelevant to the question whether account must be taken of the Due Process Clause.'" *Id.* (quoting *Goss,* 419 U.S. at 576, 95 S.Ct. 729). The length of Thomas's suspension and the amount of lost pay indicate that the deprivation was more than a minor employment event. As noted above, the suspension completely extinguished his powers as a special deputy sheriff for forty-five days and caused a significant financial loss. Although there is little guidance in the decisions on the questions of whether and when an unpaid suspension from a position that is otherwise protected by the Due Process Clause itself rises to the level of a property interest, a forty-five day period appears significant enough to warrant the procedural protections of the clause. While a one-week period of suspension or a mere shift in assignments or hours may not be enough to deserve such protections, one and one-half months seems to cross the line into the region subject to the clause.

form of implied contract of employment concerning rank or suspension, Thomas could not assert a property right based on that contract unless the contract was made pursuant to a statute or authorizing regulation. *See King v. Lensink,* 720 F.Supp. 236, 238 (D.Conn.1989). Thomas has not set forth any evidence indicating that the Code of Conduct was an implied contract authorized by statute or regulation. As a result, the Code of Conduct creates no property interest additional to Conn. Gen.Stat. § 6–43.

The financial impact also is relevant as to whether the procedural protections of the clause apply. Accordingly, the forty-five day suspension without pay rises here to the level of constitutional significance. As mentioned below, however, the *extent* of the procedural protections related to such suspension may very well not be as great as in the case of termination.

As the Court concludes that Thomas's interest against a forty-five day suspension without pay is protected by Conn. Gen. Stat. § 6–43 and rises to the level of a constitutionally protected interest, the Court must next examine the procedures employed by Zaharek prior to issuing that suspension.

**B. Adequate Process**

■ To determine what process is due, the U.S. Supreme Court has set forth a balancing test of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The timing and nature of the due process hearing varies depending on a number of competing factors, including the length or finality of the deprivation. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

■ In applying its *Mathews* test, the Supreme Court has held that, in most circumstances, a pre-termination or suspension hearing is required, although it may be very limited if a post-discipline hearing occurs. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *See also Gilbert v. Homar,* 520 U.S. at 929–30, 117 S.Ct. 1807. Here, the question is not whether the pre-suspension hearing was adequate because it was followed by a full adversarial hearing, but whether the pre-suspension meetings and hearings met the *Mathews* test, especially since the sanction was only a 45-day suspension, rather than termination. As the Supreme Court stated in *Gilbert,* their decisions "emphasized that in determining what process is due, account must be taken of 'the *length*' and '*finality* of the deprivation'." 520 U.S. at 932, 117 S.Ct. 1807 (emphasis in original) (citation omitted). Thus, the first part of the *Mathews* test as applied here—Thomas's "private interest" in his position as a special deputy sheriff—is important, but not nearly as significant as if termination had been the sanction imposed.[16]

As to the second part of the *Mathews* test, the investigation consisted of a number of interviews regarding the allegations against Thomas and produced sworn statements of the two complaining women. That information was disclosed to Thomas, it was presented to his attorney, and his attorney and he were given the opportunity on a number of occasions to present contrary evidence. Meehan also met with the two women to confirm the truth of their statements. Although Zaharek and the Office of County Sheriffs did not compel the women to be present at the various meetings and hearings, Thomas's attorney was not prevented from interviewing them,

---

**16.** Thomas also claims that his suspension caused the loss of his expected appointment as chief judicial marshal after the change from the county sheriffs' system to the state marshal system. However, Thomas points to no authority which created a property right to that position, and the language of Conn. Gen. Stat. § 6–43 that is relevant here was no longer in effect.

requesting that they attend,[17] or otherwise rebutting their claims.[18]

Although there is always some value in requiring the attendance of complaining witnesses at hearings so that they may be cross-examined, it would have been of limited value here. Their statements were made under oath, Meehan interviewed them after the statements were given,[19] and Thomas had many opportunities to rebut them through his own statement or by bringing additional evidence to be considered. Finally, it is important to note that although Thomas denied the allegations in their entirety in his first few meetings with Meehan, he admitted at the two hearings when his lawyer was present that he had sexual contact in the restaurant with both Potter and Weeks. The specific sexual conduct that Thomas admitted—although it will not be repeated in detail here—would likely have provided an adequate basis for the suspension imposed by Zaharek.

 Thomas also argues that Zaharek's *promise* to give him an opportunity to confront or question his accusers, and the failure to give him such, constituted a denial of his due process rights. However, even assuming Zaharek made that promise, it did not entitle Thomas to additional procedures under the Constitution. "[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny." *Rogers v. Okin,* 738 F.2d 1, 8 (1st Cir.1984). Moreover, there is no evidence that Thomas asked to continue the hearings when he discovered that the complaining witnesses would not be present so that he could secure their attendance.

In sum, there was not a substantial risk of erroneous deprivation here and the probable value of cross-examination of Potter and Weeks was insubstantial.

As to the third *Mathews* factor, the government has a strong interest in not requiring a full trial-like hearing under these circumstances. If mere suspension from employment always required trial-like hearings, substantial interference with the work of our government would likely result through the burden that would be imposed for suspending an employee. This is not to say that suspension from employment may never require such extensive procedural protections, but only that under the circumstances presented here—a limited period of suspension justified by sworn statements of complaining witnesses—it is not always required that the hearing require the attendance of the

---

17. Thomas asserts that "he was ordered by the defendant never to contact any of the [two witnesses]." Br. in Opp'n to Mot. for Summ. J. at 5. Thomas testified at his deposition that he was told this by Meehan at the conclusion of his meetings with her. However, these predated the January 27 and May 5, 1999 hearings when Thomas was represented by counsel. At those two sessions, his attorney contested the allegations on his behalf. There has been no evidence presented that, as to those two sessions, Zaharek prohibited Thomas's counsel from contacting the two complaining witnesses or arranging for their attendance.

18. As to the incident involving Potter, another witness was then present (who was named by Potter in her statement), but was not interviewed by Thomas nor called to appear at the meetings and hearings with Meehan and Zaharek.

19. The Meehan interviews of Potter and Weeks were especially important because their sworn statements were witnessed by Andrew Ocif, a former High Sheriff of Litchfield. Thomas claims that Ocif was biased against him because of their dealings when Ocif was High Sheriff.

complaining witnesses and their cross-examination by counsel.

Balancing all this under *Mathews,* the Court concludes that due process was met with the series of meetings and hearings Thomas was afforded prior to his suspension.

### C. Clearly Established

Even if the Court were to assume that Thomas's due process rights were *not* satisfied through the numerous meetings and hearings conducted by Meehan and Zaharek, the next step in the qualified immunity inquiry is to determine whether Thomas had a clearly established right to confront and cross-examine the witnesses.

 A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights. *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999). In deciding whether a right was "clearly established," the Court considers the following: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful? *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). In addition, a right is "clearly established" if " '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right' ". *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998) (citing *Anderson v. Creighton,* 483 U.S.

635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

It may very well be that in a termination hearing for an employment position that enjoys "property right" status, confrontation and cross-examination of complaining witnesses is required. However, it is certainly not clear from the Connecticut statutes here or relevant case law that it was required prior to suspension, even for 45 days. In this case, the Connecticut statutes on the sheriffs' system did not provide that special deputy sheriffs were entitled to the opportunity to confront and cross-examine witnesses prior to or after a suspension without pay. In addition, though many courts have held that due process requires confrontation and cross-examination of the employer's witnesses in a pre-*termination* hearing where the termination is based on "serious accusations having possible criminal implications," *Hameli v. Nazario,* Civ. A. No. 94–199–SLR, 1994 WL 827787, * 6–7 (D.Del. Sept. 2, 1994); *see also McClure v. Indep. Sch. Dist. No. 16,* 228 F.3d 1205, 1211–12 (10th Cir.2000), neither the Supreme Court nor the Second Circuit have extended that procedural requirement in the context of a pre- or post-*suspension* hearing. Thus, it was not clearly established that Thomas was entitled to confront and cross-examine Potter and Weeks either prior to or after his suspension.[20]

Accordingly, Zaharek is entitled to qualified immunity on Thomas's due process claim based on his property interest in his suspension without pay.

### D. Liberty Interest

 Thomas also claims he was deprived of a liberty interest when he was demoted from his position as captain and

---

**20.** Under *Harhay,* since the Court has decided that the right was not clearly established, there is no need for the Court to decide the third step of the qualified immunity inquiry, whether Zaharek's actions were not objectively reasonable. 323 F.3d at 211–12.

suspended without pay.[21] The protection of liberty enshrined in the Fourteenth Amendment encompasses the freedom "to engage in any of the common occupations of life." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Thus, if an employee is discharged in a manner that so significantly impairs his reputation that he is unable to secure like employment, he may have a cause of action under the Due Process Clause. *See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (" '[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971))). The employee must show that when he was discharged, statements were made that impugned the employee's reputation and interfered with his ability to secure employment elsewhere. *See Donato v. Plainview–Old Bethpage Cent. School Dist.,* 96 F.3d 623, 630 (2d Cir.1996).

Thomas does not allege, nor offer evidence, that statements concerning his demotion and suspension were publicized by Zaharek or interfered with his ability to secure employment elsewhere. As mentioned previously, when a party moves for summary judgment, the opposing party must come forward with specific facts showing there to be a genuine issue of fact for trial. *See Law Firm of Daniel P. Foster v. Turner Broadcasting,* 844 F.2d 955, 959 (2d Cir.1988). Here, Thomas has offered no evidence that Zaharek made false statements, or that any such statements were disseminated publicly, or that such statements directly interfered with Thomas's future employment prospects.

The record reveals only that Thomas received a letter dated May 11, 1999 outlining the provisions of the sheriffs' code of conduct which Thomas had violated and the discipline imposed. These statements are insufficient to constitute a "significant roadblock" to Thomas's ability to practice his profession or occupation. *See Donato,* 96 F.3d at 631; *Astwood v. Dep't of Corr.,* 45 Fed.Appx. 40, 42, 2002 WL 31002489, at *2 (2d Cir.2002). In fact, the record reveals that Thomas retained his employment with the sheriff's office following his demotion and suspension and continues to be employed as a state marshal.

Accordingly, Thomas has failed to create a genuine issue of material fact that he was deprived of a liberty interest, and Zaharek is entitled to qualified immunity on this claim also.

## IV. Conclusion

For the preceding reasons, Zaharek's motion for summary judgment [Doc. # 28] is GRANTED. The Clerk is directed to close the case.

---

**21.** Although Thomas asserted in his complaint the deprivation of both a property and liberty interest, he appears to have abandoned the liberty interest claim in his summary judgment papers.